Melvin P. WILLIAMS and Carol J. A. Williams, Plaintiffs,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.

Feb. 10, 1965.

Melvin Pearson Williams, Hyde Park, N. Y., pro se and for plaintiff Carol J. A. Williams.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for defendant; Arthur S. Olick, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

This is a suit for refund of $107.19 in income taxes paid for the year 1958 plus interest. The plaintiffs claim that $540 paid by the plaintiff Melvin P. Williams for tuition and fees to George Washington University Law School in 1958 was a deductible expense. Trial was held before the court without a jury.

The proposed findings of fact, conclusions of law and briefs of the parties having been received, the court, after considering the pleadings, evidence, exhibits and the stipulations of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

FINDINGS OF FACT

1. Plaintiff Melvin P. Williams graduated from the Rennselaer Polytechnic Institute with a degree in Electrical Engineering in June, 1957.

2. Prior to 1957, International Business Machines Corporation (IBM) hired both lawyers and non-lawyers to do patent work at its various offices and plants. In 1957, IBM decided that thenceforth it would hire only members of the bar as "patent professionals" to handle its patent affairs.

3. In 1957, in furtherance of this policy, IBM opened its Patent Training Center in Washington, D. C. in order to train such patent attorneys. For this purpose IBM recruited college graduates with

degrees in engineering or science who could qualify for admission to law school. Except for the Patent Training Center, IBM conducted no other patent work in Washington, D. C. The sole purpose of the Training Center was to provide patent attorneys for IBM offices at locations other than Washington, D. C.

4. IBM notified various colleges throughout the United States of this program to start on April 1, 1957 and invited applications from engineering or science seniors interested in patent law who wished "to take a permanent position in the IBM Patent Department * * [and] be trained to write and prosecute patent applications with the opportunity to study law in evening classes at an accredited law school, in preparation for becoming members of the Bar and Registered Patent Attorneys."

5. In June, 1957, plaintiff Melvin P. Williams accepted employment at IBM as a "patent trainee" in the aforesaid program for ultimate assignment to an IBM office as a "patent attorney" provided he fulfilled the requirements of IBM therefor as hereinafter stated.

6. Thereafter, plaintiff Melvin P. Williams attended George Washington University Law School evenings from September, 1957 to June, 1961; during the day he was employed full-time as a "patent trainee" by IBM at its Patent Training Center in Washington, D. C.

7. Plaintiff Melvin P. Williams as a "patent trainee" of IBM was required, with other such trainees, to—

(1) attend evening law school;

(2) maintain a degree status at such school;

(3) secure a LL.B degree in a prescribed four-year period of study;

(4) obtain admission to the bar; and

(5) gain admission to practice before the Patent Office.

A "patent trainee" who did not fulfill these requirements was subject to dismissal from the program and precluded from employment by IBM in any patent capacity.

8. Plaintiff Melvin P. Williams and other "patent trainees" employed by IBM at its Patent Training Center in Washington, D. C., also received progressive "on the job" day-time training while attending law school in the evenings. A trainee's work was carefully selected and supervised and approached that of a regular patent professional as the training progressed. In addition, trainees received certain classroom instruction.

9. The purposes of Mr. Williams in securing the law school education were twofold: (1) Fulfilling the requirements of his employer imposed as a condition to the retention of his position; and (2) Seeking advancement to a new position.

10. Mr. Williams' "primary" purpose in obtaining the law school education was to retain his position as a "patent trainee."

11. Plaintiff Melvin P. Williams received his law degree in June, 1961, was admitted to the District of Columbia Bar (and later to the New York Bar) and to practice before the Patent Office, thus completing the essential requirements of the program.

12. After receipt of his law degree, plaintiff Melvin P. Williams was transferred by IBM from the Patent Training Center in Washington, D. C., to the IBM offices in Poughkeepsie, New York; at the same time his title was changed from "patent associate" to "patent agent" and he was given a $1,000 increase in annual salary. Thereafter, when he was admitted to the District of Columbia Bar, his title was changed to "patent attorney." He has earned a small amount annually by practicing law independently in his home community.

13. During 1958, plaintiff Melvin P. Williams paid to George Washington University Law School $540 for tuition and fees incident to a prescribed course of study leading to the Bachelor of Laws Degree.

14. During the year 1948, Melvin P. Williams received some reimbursement from IBM for his law school expenses. The amount of this reimbursement was

included in his salary, reported as income and subjected to withholding tax.

15. In their joint federal income tax return (Form 1040) filed for the calendar year 1958, plaintiffs reported a taxable income of $4,265.77, a tax liability of $858.47 and withholding tax payments of $943.42; they claimed an overpayment of $84.95.

16. In their federal income tax return (Form 1040) for the calendar year 1958, plaintiffs itemized the $540 law school expense as a deductible business expense.

17. Plaintiffs have paid the District Director of Internal Revenue the sum of $19.13, plus interest in the amount of $3.11, on account of their tax liability for the calendar year 1958; added to the sum of $84.95 demanded by plaintiffs as a refund, this totals $107.19, the amount in dispute in this action.

18. On June 16, 1959, plaintiffs duly filed with the District Director of Internal Revenue a claim for refund of the aforesaid payment of tax. Thereafter, plaintiffs executed a Waiver of Registered Mail Notification of Claim Disallowance (Form 2297). More than six months have expired from the date of filing of the claim for refund and no part of the tax payment has been refunded or approved for refund.

19. On July 3, 1962, plaintiffs filed the complaint herein seeking the refund.

## DISCUSSION

Whether law school tuition expenses of plaintiff Melvin P. Williams are deductible depends on whether they are ordinary and necessary business expenses under Section 162 of the Internal Revenue Code of 1954. Section 162 provides in pertinent part as follows:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

The Treasury Regulations interpreting Section 162, Section 1.162–5, provide in pertinent part:

"*Expenses for education*—(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

"(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

"(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. * * *

"(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. * * *"

It appears that Mr. Williams was motivated in attending law school by two purposes: (1) meeting a condition to the retention of his job as a "patent trainee"; and (2) acquiring a new position as a patent attorney. If considered alone, the first purpose qualifies the expense for deductibility and the second precludes deductibility.

The leading Second Circuit case dealing with an education expense deduction and involving a similar dual purpose is Marlor v. Com'r, 251 F.2d 615 (2d Cir. 1958) (per curiam), reversing 27 T.C. 624 (1956). The Court of Appeals expressly adopted the dissent in the Tax Court and held the education expenses in issue deductible.

In the Marlor case the taxpayer held the position of tutor at a college. The position was probationary since (1) appointments were for one year or less; (2) progress toward a doctorate was a requisite to reappointment; (3) a tutor who had not met the eligibility requirements for the position of instructor (all requirements for a Ph.D. degree except

publication of a thesis) within five years of his initial appointment was not eligible for reappointment as a tutor or for promotion to the rank of instructor on the permanent staff.

The Court of Appeals found that the taxpayer had a dual objective in incurring the education expense. One was to qualify for appointment to the permanent staff. The second "much more immediate" objective was to retain his position as a tutor. The latter purpose was found sufficient to qualify the deduction as an ordinary and necessary business expense. The Ninth Circuit cited Marlor with favor and took a similar position in United States v. Michaelsen (C. I. R. v. Johnson), 313 F.2d 668, 671 (9th Cir. 1963).

Other cases in which educational expense incurred for dual purposes, one justifying deductibility and the other non-deductibility, were held to be deductible are Devereaux v. C. I. R., 292 F.2d 637 (3rd Cir. 1961) and Michaelson v. United States, 203 F.Supp. 830 (E.D.Wash.1961), aff'd, 313 F.2d 668 (9th Cir. 1963).

In Sandt v. Com'r, 303 F.2d 111 (3rd Cir. 1962), however, the Third Circuit held an educational expense not to be deductible on facts similar to those involved here. The Third Circuit purported to decide this case consistently with Marlor. The taxpayers transferred from positions as research chemists to jobs as patent chemists at E. I. DuPont de Nemours & Company. Patent chemists were required to attend and complete law school and were promoted to positions as patent attorneys upon passing a bar examination. Failure to complete law school meant dismissal from the patent division of the company.

The court stated that "where several purposes exist as the motivation for undertaking the expenditure, it is the primary one that is decisive in determining deductibility." Sandt v. Com'r, supra at 112. With this foundation, the court decided that the primary purpose of the taxpayers was to obtain a new position and denied the deduction. Marlor was distinguished by the statement: "We think that taxpayers' reliance on Marlor v. Commissioner, 251 F.2d 615 (C.A.2, 1958), is not helpful, for the court there found the primary motive was to retain and not to obtain a position." Sandt v. Com'r, supra, 303 F.2d at 113.

■ I conclude that the expense in issue here is deductible. Marlor is the controlling decision in this circuit and its facts parallel those of the present case. It is clear that the education here was a requisite to the retention of Mr. Williams' job as a patent trainee. Certainly, retention of his job was his immediate objective in attending law school. Indeed, since a condition to fulfillment of Mr. Williams' second purpose, promotion to the job of patent attorney, was successful completion of the term as patent trainee, retention of his job was his *most* immediate and pressing, hence, primary, purpose.

■ This disposition of the case is supported by Treasury Regulation 1.162–5(b) which provides in part:

"The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement *unless such education is required as a condition to the retention by the taxpayer of his present employment."* (Emphasis added.)

Thus, if education is required as a condition to the retention by the taxpayer of his employment it may negative the inference of nondeductibility which would otherwise be made from the fact that the education meets express requirements for a new position. This principle, applicable here, in my view determines this case.

■ Plaintiff Melvin P. Williams received from IBM certain reimbursement for his law school expenses, the exact amount of which is not apparent from the record. This allowance was reported

by Mr. Williams as income. Such payments by IBM are no bar to the deduction of the law school expenses incurred by Mr. Williams. Rev.Rul. 60–97, Cum. Bul. 1960–1, p. 75. Further, since Mr. Williams seeks to claim the educational expense under Section 162 as an itemized deduction, the amount of the reimbursement is not relevant. See I.R.C. § 62; Rev.Rul. 60–97, Cum.Bul. 1960–1, p. 75.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this action under 28 U.S.C. § 1346.

2. Plaintiffs are entitled to a deduction in their 1958 tax return in the amount of $540 expended for tuition and fees at law school.

3. Consequently, plaintiffs are entitled to a refund of $107.19.

Settle judgment on notice.