FEDERAL LABOR RELATIONS
AUTHORITY, Petitioner,

v.

SOCIAL SECURITY
ADMINISTRATION,
Respondent,

American Federation of Government
Employees, AFL–CIO, Intervenor.

No. 87–1118.

United States Court of Appeals, District
of Columbia Circuit.

May 17, 1988.

Petition for Enforcement of an Order of the Federal Labor Relations Authority.

Ruth E. Peters, William E. Persina, and Arthur A. Horowitz, Washington, D.C., were on petitioner's opposition to the motion to dismiss.

Anne M. Wagner and Mark D. Roth, Washington, D.C., were on intervenor's opposition to the motion to dismiss.

Eileen M.I. Houghton, was on respondent's motion to dismiss.

Before WALD, Chief Judge, and D.H. GINSBURG and SENTELLE, Circuit Judges.

ON MOTION TO DISMISS OR ALTERNATIVELY, TO TRANSFER

PER CURIAM:

The Federal Labor Relations Authority ("Authority") seeks enforcement of an order issued September 10, 1986. The order required the Social Security Administration ("SSA") to bargain upon request over seven of eight proposals made by the American Federation of Government Employees ("AFGE"). The proposals concerned a program of "service observation" that SSA had devised to monitor telephone conversations of those employees who called the public and other offices as an integral part of their job. The agency intended to use the service observation procedure to evaluate employee performance and to review the quality of service provided to the public. As of the date on which the Authority issued its order, SSA had not yet implemented the program.

With the Authority's order in hand, the AFGE renewed its request to SSA to bargain over the seven proposals the Authority had found to be negotiable. On November 3, 1986, SSA informed the union that it had discontinued its plan to use service observation as a means for assessing individual employee performance, and argued that as a result of this decision, it no longer had an obligation to bargain over five of the seven contested proposals. The Authority then filed an application for enforcement of its September 10 order in this circuit.

The SSA moves to dismiss the enforcement action for lack of venue, or in the alternative, to transfer the action to the United States Court of Appeals for the Fourth Circuit. In support of this motion, SSA notes that Baltimore, Maryland, is the place where (1) the agency has its principal place of business, (2) any unfair labor practice occurred, and (3) the relevant records and agency officials with knowledge of this matter are located.

The governing judicial review statute, 5 U.S.C. § 7123(b), provides that an enforcement action may be brought in "any appropriate United States court of appeals." No

court of appeals has construed this ambiguous language. We do so now, and conclude that in this case venue is proper in this circuit. We therefore deny the motion to dismiss. We also deny the alternative motion to transfer, as neither the interests of justice nor the convenience of the parties requires transfer.

## I

■ Section 7123 of the Federal Labor Relations Act ("FLRA") reads in relevant part:

(a) Any person aggrieved by any final order of the Authority ... may ... institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business *or in the United States Court of Appeals for the District of Columbia.*

(b) The Authority may petition *any appropriate United States court of appeals* for the enforcement of any order of the Authority ...

5 U.S.C. § 7123 (1982) (emphasis added).

The parties urge two possible meanings of section 7123(b) upon the court. The SSA asserts that "by limiting the Authority's power to petition for enforcement only to an 'appropriate' court of appeals, Congress intended that traditional considerations as to where venue lies must control." Moreover, according to SSA, application of these "traditional considerations" precludes venue in this court since (1) the respondent does not reside here and (2) no unfair labor practice occurred within the jurisdiction. The Authority instead contends that the term "any appropriate United States court of appeals" includes this court. First, the Authority argues that the language of subsection (b) must be read in light of section 7123(a), which establishes that the United States Court of Appeals for the District of Columbia is always an "appropriate" forum for enforcement of its orders. Second, the Authority contends that venue is proper in this particular case because SSA conducts business in the District.

In an effort to give meaning to the elliptical phrase chosen by Congress, we turn

first to the legislative history of section 7123(b). The judicial review provision of the Civil Service Reform Act of 1978, Pub. L. No. 95–454, 92 Stat. 1111, codified at 5 U.S.C. § 7123, was not in the House and Senate bills as introduced, but appeared in H.R. 11,280 when it was reported out of the House Committee. The House Committee, in drafting the judicial review provision, borrowed from an earlier bill, H.R. 9094, 95th Cong., 1st Sess. (1977). *See* H.R.Rep. No. 1403, 95th Cong., 2d Sess. 12 (1978). The earlier bill explicitly provided that enforcement actions could be brought in any court of appeals in which the unlawful act in question occurred or the petitioner resides or transacts business. H.R. 9094, Subchapter III (at § 7124. Judicial review).

This more restrictive language was not adopted and instead the statute provided for judicial review in "any appropriate United States court of appeals." This alone is far from conclusive. The Authority urges that the committee report suggests parallel construction of the venue provisions in subsections (a) and (b). The report states that:

Section 7123 provides for judicial review of certain final orders of the Authority by the circuit courts of appeal, enforcement of orders of the Authority by the *same* courts, and injunctive relief in appropriate cases.

H.R.Rep. No. 1403, at 57 (emphasis added). The word "same," however, surely refers back to circuit courts, as opposed for example to district courts, and does not imply that venue is identical in appeals and in petitions for enforcement of agency orders. The report further describes subsection (a) as providing for venue in the "appropriate" court of appeals and uses the same word, "appropriate," to describe venue under section 7123(b). *Id.* Again, this is not strong support for the Authority's position. We therefore find the legislative history inconclusive in construing section 7123(b). We turn therefore to the National Labor Relations Board's ("Board") parallel judicial review provision, 29 U.S.C. § 160(e) & (f), for such guidance as it can afford us.

## II

The FLRA, which was enacted in 1978 to reorganize comprehensively the structure of labor-management relations in the federal government, *see Library of Congress v. FLRA,* 699 F.2d 1280, 1283 (D.C.Cir.1983), was modeled on the National Labor Relations Act ("NLRA"). Provisions of the FLRA were "crafted either by analogy or by contrast" to the NLRA. *National Treasury Employees Union (NTEU) v. FLRA,* 810 F.2d 295, 299 (D.C.Cir.1987). The Authority, established to administer and formulate policies under the FLRA, performs a role closely analogous to that of the Board in the private sector. *Id.* at 1283 & n. 10. A parallel construction of the venue provisions applicable to review of the decisions of the two agencies is therefore appropriate, unless the venue provision of the FLRA reflects considerations unique to the public sector. *Compare NTEU,* 810 F.2d at 300 (finding no practical distinction between private and public precedent on midterm bargaining and using NLRA to interpret FLRA) *with American Federation of Government Employees v. FLRA,* 834 F.2d 174, 180 (D.C.Cir.1987)) (finding reliance on private sector precedent inappropriate when the NLRA contained no parallel provision on management participation in union affairs) *and National Treasury Employees Union v. FLRA,* 826 F.2d 114, 122 (D.C.Cir.1987) (noting that public sector requires government agencies to operate in effective and efficient manner; no comparable requirement exists in private labor law). We see no unique public sector concerns here that preclude drawing an analogy to the venue provision of the NLRA.

Section 160(e) of the NLRA provides that the Board may bring an enforcement action in the circuit where the unfair labor practice occurred, or where the respondent resides or transacts business. Any person aggrieved by a final order, however, may seek review under section 160(f) in the circuit where the unfair labor practice occurred, where that person resides or transacts business, *or* in the D.C. Circuit. Aligning section 160(e) of the NLRA with section 7123(b) of the FLRA, we find that the phrase "appropriate court of appeals" in section 7123(b) includes the circuit where the respondent resides or transacts business.

■ Construing section 7123(b) in a manner that parallels section 160(e) accommodates the dichotomy between the parties involved in each type of action. A purpose of venue restrictions is to promote the convenience of the party who is required to defend an action. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 184–85, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979). When the Authority brings an enforcement action, the respondent is often a government agency and does in fact reside or transact business in the District of Columbia; in such cases venue will be proper here. Our refusal to read "appropriate" as always including this circuit, however, avoids burdening those respondents that, like many respondents in NLRA enforcement actions, do not reside or transact business here.

■ Applying this construction of section 7123(b), we find that venue for this enforcement action is proper in this circuit.[1] The SSA admittedly transacts business here. Furthermore, we find that transferring the case, as we are authorized to do under our inherent discretionary power, is not in the "interest of justice and sound judicial administration." *Eastern Air Lines, Inc. v. Civil Aeronautics Board,* 354 F.2d 507, 510 (D.C.Cir.1965). With respect to the "interest of justice," we note that while the SSA's central office is in Baltimore, the agency is a subdivision of the Department of Health and Human Services, which is headquartered in the District of Columbia. Indeed, the attorney representing the agency is located in the District. Thus, retaining the petition in

---

1. We note that the NLRA also places venue where the unfair labor practice occurred. Whether such venue lies under section 7123(b) of the FLRA is not an issue in this case, however. Because the SSA transacts business here, venue is proper in this circuit regardless of where the practice complained of occurred.

this court is not likely to subject the respondent to undue inconvenience. Nor do the interests of "sound judicial administration" require a transfer; SSA cannot maintain that the Fourth Circuit is "familiar with the background of the controversy through review of the same or related proceedings," or that it has a particular expertise in deciding issues of this sort. *Id.* The alternative motions to dismiss and to transfer are therefore denied.